852 So.2d 1283 (2003)
Larry THOMASON, Plaintiff-Appellee,
v.
WAL-MART STORES, INC., Defendant-Appellant.
No. 37,520-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 4, 2003.
*1285 Allen & Gooch, by Charles Martin Kreamer, Sr., Lafayette, for Appellant.
Langston Law Firm, L.L.C., by Carlton Lashayne Parhms, for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
DREW, J.
Wal-Mart appeals a judgment awarding workers' compensation benefits, penalties, and attorney fees to Larry Thomason. We amend the judgment to increase the award of attorney fees, and as amended, the judgment is affirmed.

FACTS
Thomason was employed as an unloader at a West Monroe Wal-Mart. Thomason's job required him to lift food items and drinks from a conveyor belt coming out of a truck and place the items on a pallet. He would then pull the loaded pallets to the store floor so the store's night crew could stock the items. His normal shift was from 3:00 p.m. to midnight.
Thomason contends that he injured himself at work on Tuesday, November 20, 2001. Thomason, who was 54 years old at the time he was injured, was scheduled to be off work on Wednesday and Thursday, which was Thanksgiving Day. Thomason recalled working a "little" harder than normal that Tuesday due to more trucks delivering merchandise in anticipation of the holiday. He noticed a "little" pain after getting off work on Tuesday, but dismissed it as normal pain. Thomason had testified in his deposition that the pain he felt was in his stomach. Thomason believed that he worked his usual shift that Tuesday, but was unsure if he worked overtime.
Thomason spent Wednesday resting at home. He described feeling a "little" pain, but he did not think anything was seriously wrong. He also noticed that he was urinating more frequently. The pain increased on Thursday as he spent the day at home lying down. By Thursday evening, he believed that something was wrong because his pain was now severe and his left testicle was beginning to swell. Thomason returned to work as scheduled on Friday despite barely being able to walk because he did not want his supervisors to think he was missing work for a frivolous reason. Thomason also wanted his supervisors to see his condition.
Shortly after arriving at work on Friday, Thomason met with Terri McClinton, who worked as Event Coordinator and Risk Control Team Leader for Wal-Mart. Ms. McClinton took Thomason to the emergency room at Glenwood Regional Medical Center, where he was examined by two doctors. The first doctor told him that his testicle problem was related to a birth defect. Ms. McClinton left the hospital soon thereafter without seeing the second doctor because the first doctor told her that she could leave. A testicular ultrasound "suggested" a partial incomplete torsion of the left testicle.
The second doctor to examine Thomason at Glenwood was urologist Dr. Arthur Liles. Thomason reported low abdominal pain lateralizing to his left testicle. Thomason recalled Dr. Liles saying that the swelling could have been caused by strenuous work. Dr. Liles' report from the emergency room examination noted that the ultrasound suggested a possible torsion; however, the report also stated that the "possibility of delayed torsion [was] entertained but considered very unlikely." Dr. Liles' diagnosis was "[l]eft epididymidis probably secondary to heavy lifting and straining from a prostatitis." Thomason was initially treated with medications, but his condition was not cured. His left testicle *1286 was surgically removed on January 22, 2002, due to a left scrotal abscess secondary to epididymitis. Dr. Liles' report from that date states that Thomason presented "to the emergency room over the holidays with a left epididymitis, documented Escherichia coli urinary tract infection with onset of pain acutely while heavy lifting."
Following a hearing on the merits, the WCJ rendered judgment ordering Wal-Mart to pay Temporary Total Disability benefits for 18 weeks, benefits for 82 weeks due to scarring and disfigurement, penalties of $4,000 for its refusal to authorize medical and compensation benefits, and attorney fees of $7,500.
Wal-Mart's motion for new trial was denied. Wal-Mart appealed the judgment. Thomason answered the appeal seeking an increase in the award of attorney fees.

DISCUSSION

Denial of Benefits
An employee is entitled to receive workers' compensation benefits for personal injuries from an accident arising out of and in the course of his employment. La. R.S. 23:1031(A). In a worker's compensation action, the plaintiff must establish the occurrence of a work-related accident by a preponderance of the evidence. While the worker's testimony alone may be sufficient to discharge his burden of proving a work-related accident, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker's version of the incident; or (2) the worker's testimony is not corroborated by the circumstances following the alleged incident. Such corroboration may include medical evidence and the testimony of a spouse, fellow workers, or friends. Qualls v. Stone Container Corp., 29,794 (La. App.2d Cir.9/24/97), 699 So.2d 1137, writ denied, 97-2929 (La.2/6/98), 709 So.2d 736.
Wal-Mart first contends that the WCJ erred in finding that Thomason carried his burden of proving that he sustained his injury in an accident at work. An accident within the context of workers' compensation is defined as an "... actual, identifiable, precipitous event happening suddenly or violently ... and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).
Wal-Mart urges that Thomason was unable to point to a specific moment at work on Tuesday when he sustained his injury. Ms. McClinton recalled that Thomason was not sure of the date and time of his injury, and he did not know how he had been injured. She also recalled that Thomason did not mention anything specific happening during the last days he worked prior to his injury. She testified that when she asked him why he thought his injury was related to his job at Wal-Mart, he replied that he had been at home and doing nothing during his days off. Thomason testified that he did not have an accident at Wal-Mart on Tuesday, and he could not recall anything happening that Tuesday that caused him pain.
In her oral reasons for judgment, the WCJ noted that an "identifiable" and "precipitous" event occurred on Tuesday, namely, the unloading and pulling of heavier-than-normal pallets. The WCJ stated that she believed Thomason was the type of individual who would attempt to bear pain without complaint until the point it became unbearable, and she found Thomason to be a very credible witness.
Factual findings in workers' compensation cases are subject to the manifest error/clearly wrong standard of review. *1287 Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Corley v. Wal-Mart Stores, Inc., 31,917 (La. App.2d Cir.5/7/99), 737 So.2d 204, writ denied, 99-2002 (La.10/15/99), 748 So.2d 1151.
This court has considered the meaning of "accident" in workers' compensation cases:
The "actual, identifiable, precipitous event" under the present law may include a routine movement or task that the claimant regularly performs, if the claimant is able to identify with some particularity as to time, place and manner, the objective manifestation of the accidental injury.
McConnell v. City of Ruston, 27,154 (La. App.2d Cir.8/23/95), 660 So.2d 100, 102, writ denied, 95-2348 (La.12/15/95), 664 So.2d 453. Regarding the definition of "accident", the Third Circuit has stated:
Although the definition of accident was amended to emphasize that the identifiable, precipitous event must be more than a gradual deterioration or progressive degeneration, jurisprudence holds that these terms do not exclude those instances where a worker can establish a work-related event, which may seem to be a customary or routine work activity, which results in an injury to the employee. Bryan v. Allstate Timber Co., 98-840 (La.App. 3d Cir.12/16/98), 724 So.2d 853; Robin v. Schwegmann Giant Supermarkets Inc., 93-2310 (La.App. 1st Cir.11/10/94), 646 So.2d 1030, writ denied, 95-202 (La.3/17/95), 651 So.2d 259; Guilbeaux v. Martin Mills, Inc., 93-1359 (La.App. 3d Cir.5/4/94), 640 So.2d 472, writ denied, 94-1444 (La.9/23/94), 642 So.2d 1291; Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La.App. 1st Cir.1992).
Richard v. Workover & Completion, 00-794 (La.App. 3d Cir.12/6/00), 774 So.2d 361, 364.
Although Thomason was unable to pinpoint the precise moment of injury, this does not disqualify him from receiving benefits. The evidence established that Thomason's job required him to perform physical labor, and there was more work than on a typical day for him to do that Tuesday because of the approaching holiday. Thomason noticed pain after getting home from work, and this pain increased over the next two days. Thomason should also not be penalized because he described his pain as minor before Thursday night. Individuals have different tolerances of pain, and Thomason was accustomed to feeling pain. We also note that Thomason could not recall ever previously experiencing health problems related to his groin area.
Thomason's belief that his injury was related to work is also supported by Dr. Liles' emergency room diagnosis of "[l]eft epididymidis probably secondary to heavy lifting and straining from a prostatitis." (Our emphasis.) The doctor who initially examined Thomason and told him that he had a birth defect in his testicle was not called to testify by Wal-Mart. This physician is apparently identified as Dr. Vernon Cantwell in Note Number 11 of Defendant's Exhibit 3.
Wal-Mart places great emphasis on the case of Sanders v. Grace Nursing Home, 98-1344 (La.9/24/99), 754 So.2d 1024, writ denied, 99-3090 (La.1/7/00), 752 So.2d 868. However, that case can be readily distinguished. Sanders was a nurse's aide helper who claimed she injured her back while changing a mattress on a Friday. Sanders did not experience any pain until Sunday night. In contrast, Thomason noticed pain on Tuesday after getting off work, and this pain remained with him until he returned to work on Friday.
Wal-Mart also urges that it was not the only source of heavy physical activity for *1288 Thomason, who admitted that he had other sources of income in addition to his job at Wal-Mart. Thomason would occasionally mow lawns on his days off, although he did not do this on a regular basis. He even mowed Ms. McClinton's lawn on one occasion. Thomason would also sometimes load his truck and go to flea markets. Thomason denied that any of his odd jobs involved heavy lifting or straining. More importantly, he was not doing any of this work or other non-employment-related strenuous work around the date he was injured.
After thoroughly reviewing the evidence in this record, we cannot conclude that the WCJ was manifestly erroneous in awarding workers' compensation benefits to Thomason.

Penalties
Wal-Mart next contends that its denial of benefits to Thomason was not arbitrary and capricious, and therefore, the WCJ's finding to the contrary was manifestly erroneous.
La. R.S. 23:1201(F) provides for the assessment of a penalty and reasonable attorney fees against the employer or insurer for the failure to timely commence or timely continue paying benefits unless the claim is reasonably controverted or if the nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201.2 provides for an assessment of attorney fees when an employer or insurer discontinues payments and the discontinuance was arbitrary, capricious, or without probable cause. See, generally, Williams v. Rush Masonry, 98-2271 (La.6/29/99), 737 So.2d 41. La. R.S. 23:1201(F) was amended, and La. R.S. 23:1201.2 was repealed, by Act 1204 of 2003.
In its oral reasons for judgment, the WCJ stated that initially Wal-Mart had a basis to deny the claim based on the birth defect comment from the first emergency room doctor; however, this changed when Dr. Liles stated that the testicle problem was probably due to lifting at work. The WCJ added that the failure to pay or further investigate after receiving Dr. Liles' report was arbitrary and capricious.
Wal-Mart apparently never paid any benefits to Thomason. Thus, the WCJ used an incorrect standard when evaluating Wal Mart's conduct. The discontinuance of benefits standard (arbitrary and capricious) was used instead of the failure to pay benefits standard (reasonably controverted). We also note that penalties were available for the failure to pay benefits, but were not available when benefits were discontinued. A claim is reasonably controverted when the employer produces factual or medical information of such a nature that it reasonably counters the claimant's evidence. Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140.
The difference between the La. R.S. 23:1201 and La. R.S. 23:1201.2 standards was addressed in Brown v. Texas-LA Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890:
The unambiguous language of La. R.S. 23:1201 clearly establishes that penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control. Unreasonably controverting a claim, which is the exception at issue in this case, requires action of a less egregious nature than that required for arbitrary and capricious behavior. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. Stated another way, such *1289 behavior arises from unrestrained exercise of the will or personal preference or lacks a predictable pattern.
The phrase "reasonably controverted," on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Citations and footnote omitted. Emphasis added.
Penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay. Lee v. Schumpert, 36,733 (La.App.2d Cir.1/29/03), 836 So.2d 1214. Nevertheless, a WCJ has great discretion in awarding or denying penalties and attorney fees. Nowlin v. Breck Const. Co., 30,622 (La.App.2d Cir.6/24/98), 715 So.2d 112.
As noted above, the WCJ used the wrong standard when she stated in her oral reasons for judgment that Wal-Mart had acted arbitrarily and capriciously. However, that does not affect our analysis as the WCJ actually used a standard more forgiving to Wal-Mart. "Unreasonably controverting a claim ... requires action of a less egregious nature than that required for arbitrary and capricious behavior." Brown v. Texas-LA Cartage Inc., 721 So.2d at 890. In addition, an appeal lies from the judgment itself, not the reasons for judgment. Louisiana Workers' Compensation Corp. v. Gray, 34,731 (La.App.2d Cir.5/9/01), 786 So.2d 310.
In her capacity as Risk Control Team Leader, Ms. McClinton handled accident reports and store safety. If an accident involved an employee, she investigated it. Ms. McClinton testified that she was unsure about the merits of Thomason's claim before the first doctor spoke to him, but once that doctor mentioned the birth defect, she felt that Thomason's injury was not job-related. Ms. McClinton never spoke with Dr. Liles in the course of her investigation. Her investigation ended when she sent the information she had gathered to Claims Management, Inc., which administered workers' compensation claims for Wal-Mart. Ms. McClinton acknowledged that she usually conducts a more extensive investigation, but there was not much more she could so because Thomason was unable to pinpoint the time or place of his injury.
At some point Claims Management received a statement from Ms. McClinton concerning what the first doctor had said about the birth defect. Claims Management sent Thomason a letter dated December 19, 2001, informing him that his claim was being denied. Dr. Liles' diagnosis is on a form entitled "Worker's Compensation Request for Medical Care." The section of the form containing the diagnosis is dated December 20, 2001. Filed into evidence as Defense Exhibit-3 is a notepad history showing that according to note number 19, as of February 27, 2002, Claims Management had received the Glenwood medical records showing the diagnosis of left epididymitis probably secondary to heavy lifting and straining from a prostatitis. Ms. McClinton stated that she did not know if Claims Management *1290 did any independent investigating of Thomason's claim.
Upon learning of Dr. Liles' diagnosis, Wal-Mart should have further investigated Thomason's claim instead of relying on the other doctor's statement about a birth defect. There is no indication in this record that Wal-Mart sought an examination of Thomason in order to confirm or rebut Dr. Liles' diagnosis. Wal-Mart did not possess factual or medical information sufficient to reasonably counter the evidence presented by Thomason. Accordingly, Wal-Mart did not reasonably controvert Thomason's claim, and we cannot conclude that the WCJ erred in awarding penalties and attorney fees.
Thomason has answered the appeal seeking an increase in the award of attorney fees for the additional expenses incurred in this appeal. We conclude that Thomason is entitled to a $500 increase in attorney fees attributable to the employer's appeal.

CONCLUSION
For the foregoing reasons, we amend the judgment to award an additional $500 in attorney fees for the appeal. In all other respects, the judgment is AFFIRMED. Costs of this appeal are assessed to Wal-Mart.

DECREE
At appellant's costs, the judgment is AMENDED, and as amended, is AFFIRMED.
CARAWAY, J., concurs in part and dissents in part with written reasons.
CARAWAY, J., concurring in part and dissenting in part.
Plaintiff admittedly could not point to an "identifiable, precipitous event" for the establishment of an accident in this case. Causation therefore has always been the critical issue surrounding plaintiff's claim. At trial, plaintiff presented no medical testimony from a doctor who might have better explained that the plaintiff's condition had to have occurred from a single event and was not the product of a degenerative process or the phantom birth defect reported on the report of one doctor.
If the evidence leaves the probabilities evenly balanced, or if it shows only a possibility of a work-related event or leaves it to speculation or conjecture, then the plaintiff fails to carry his burden. Qualls v. Stone Container Corp., 29,794 (La. App.2d Cir.9/24/97), 699 So.2d 1137. This case is very close. Nevertheless, under the manifest error standard, I do not vote to reverse the WCJ's acceptance of plaintiff's circumstantial case. I do believe that, in the absence of proof of a much stronger case of causation based upon medical testimony, the plaintiff did not prove that the defendant's contesting of the occurrence of an accident was unreasonable. I therefore respectfully dissent to the award of penalties and attorney's fees.