989 So.2d 252 (2008)
Cedric SLATER, Plaintiff-Appellee
v.
MID-SOUTH EXTRUSION, Defendant-Appellant.
No. 43,343-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*253 Robert A. Dunkelman, Scott Chafin, Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, Shreveport, for Defendants-Appellants Mid-South Extrusion, Inc. and Travelers Property Casualty Company of America.
Samuel Thomas, Tallulah, for Plaintiff-Appellee.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
In this worker's compensation case, the employer and its insurer appeal from a ruling by a worker's compensation judge (WCJ) that denied their fraud claims and awarded medical benefits in favor of the claimant, Cedric Slater. We reverse and render.

FACTS
Beginning in 1996, the claimant was employed as a maintenance utility technician by Mid-South Extrusion, Inc. (MSE), a manufacturer of plastic film. His work duties included mowing and weed-eating the grass and taking care of machinery on MSE's property.
According to the claimant, he injured his left shoulder and both wrists on or about September 8, 2004, while carrying buckets of oil at work. The claimant subsequently asserted that he developed carpal tunnel syndrome as a result of this incident. However, when he reported complaints of left arm numbness to an ER doctor on September 14, 2004, he mentioned only driving for the two days prior to the hospital visit; no mention was made of any work-related incident that could have caused or contributed to the condition.
On October 26, 2004, the claimant was riding the company mower on an incline when it flipped over. He had previously been instructed not to use the mower in this area due to the steepness of the slope and to use the weed-eater on that grass instead. He was sent to Monroe Medical Center (MMC), where he underwent a *254 drug test pursuant to his employer's policy. According to the claimant, MMC gave him Lortab for his back pain.
Due to his complaints of low back pain, MMC referred the claimant to Dr. Douglas Brown, an orthopedic specialist. Dr. Brown saw him once, on November 8, 2004. The claimant thereafter complained that an injection he was given at Dr. Brown's office caused him jaw pain, and he stated that he did not want to see Dr. Brown again.[1] However, he continued with Dr. Brown long enough to undergo an MRI, which showed mild disc bulging or wide-based protrusion at L5-S1. Dr. Brown declined to give the claimant Lorcet, instead requesting that the claimant receive all of his medications from MMC.
The claimant saw Dr. J.D. Patterson, who was apparently his primary care physician, on November 23, 2004, and December 3, 2004. He was given several prescriptions, including Lorcet Plus. It was determined that the claimant should see another orthopedist.
The claimant was then referred by Dr. Patterson to Dr. A.E. Dean, an orthopedic surgeon, who saw him twice. During the initial visit on December 15, 2004, the claimant's subjective complaints were so out of proportion to the objective findings that Dr. Dean had a nurse observe him leaving. Although the claimant had walked with a cane, ambulated slowly and told the doctor that he could not drive due to problems with his back and leg, the nurse reported that once he left the building and went around the corner, he picked up the cane, walked with a normal gait, and drove away.[2] Dr. Dean saw him again on January 14, 2005. Despite the claimant's complaints that he was no better, Dr. Dean felt that he could return to regular work duty as of January 24, 2005. Dr. Dean also declined to give the claimant Lortab.
On December 20, 2004, the claimant began seeing Dr. Tammy Jones, a doctor of osteopathy to whom he had been referred after being diagnosed as HIV-positive. Although she testified that she only saw him for management of his HIV condition, she prescribed Lortab for him on a few occasions, beginning in July 2006. However, she testified that, had she known of Dr. Dean's refusal to give the claimant pain medications in January 2005, she would not have prescribed Lortab for him.
In the meantime, the claimantwho had previously been written up for other safety violationswas cited by his employer for the incident in which he flipped over the mower. MSE suspended him for the mower incident and then fired him due to his record of safety violations.
On May 24, 2005, the claimant filed a disputed claim for compensation form with the Office of Workers' Compensation (OWC) concerning the alleged back injury. He requested medical expenses, weekly benefits, penalties and attorney fees. On June 9, 2005, the employer and its insurer, Travelers Property Casualty Company of America, filed a general denial. By joint motion, the instant suit was consolidated with an already pending claim concerning *255 the injuries he allegedly sustained in September 2004.
In January 2006, the defendants filed an amended answer in which they raised La. R.S. 23:1208, which provides for forfeiture of workers' compensation benefits when a claimant resorts to fraud and misrepresentation in seeking those benefits. In particular, they referred to the claimant telling Dr. Dean that he was unable to drive and exhibiting extreme difficulty walking during Dr. Dean's examination, only to then be observed walking to his car in a normal manner and driving away.
The matter was tried on May 16, 2007. The parties stipulated as to the claimant's employment. In addition to his own testimony, the claimant presented the testimony of Robert Hartman, MSE's manager of human resources, and the deposition of Dr. Jones. The defendants presented the testimony of Lance Joslin, MSE's maintenance manager. Among other things, they also admitted the medical record of Dr. Brown and the deposition and medical records of Dr. Dean. The defendants introduced the deposition of Dr. George Belchic, an orthopedic surgeon who treated the claimant's carpal tunnel syndrome; he opined that the claimant had polyneuropathy which was related to his HIV infection. Dr. Belchic could not relate the claimant's polyneuropathy or carpal tunnel syndrome to any work activities.
On August 9, 2007, the WCJ ruled that, as to the mowing incident, the claimant was involved in an accident within the course and scope of his employment and was entitled to medical treatment for his low back injuries. However, the WCJ held that he was not entitled to indemnity benefits and that his claims for carpal tunnel syndrome and shoulder injuries were denied. The WCJ found a lack of medical evidence showing a correlation between the claimant's first alleged incident and any alleged shoulder injury. Additionally, the defendants' fraud claims were denied. Judgment in conformity with the WCJ's ruling was signed on November 16, 2007.
The defendants appealed.

LAW
An employee is entitled to receive workers' compensation benefits for personal injuries from an accident arising out of and in the course of his employment. La. R.S. 23:1031(A). In a workers' compensation action, the plaintiff must establish the occurrence of a work-related accident by a preponderance of the evidence. Thomason v. Wal-Mart Stores, Inc., 37,520 (La. App. 2d Cir.9/4/03), 852 So.2d 1283, writ denied, 2003-2774 (La.12/19/03), 861 So.2d 573. While the worker's testimony alone may be sufficient to discharge his burden of proving a work-related accident, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker's version of the incident; or (2) the worker's testimony is not corroborated by the circumstances following the alleged incident. Such corroboration may include medical evidence and the testimony of a spouse, fellow workers, or friends. Thomason v. Wal-Mart Stores, Inc., supra.
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Player v. International Paper Company, 39,254 (La.App. 2d Cir.1/28/05), 892 So.2d 781. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La. 1993).
*256 La. R.S. 23:1208 provides, in relevant part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
. . .
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized. Baker v. Stanley Evans Logging, 42,156 (La.App. 2d Cir.6/20/07), 960 So.2d 351, writ denied, XXXX-XXXX (La.12/14/07), 970 So.2d 533. Because statutory forfeiture of workers' compensation benefits for willfully making a false statement for the purpose of obtaining benefits is a harsh remedy, it must be strictly construed. Risk Management Services v. Ashley, 38,431 (La.App. 2d Cir.5/14/04), 873 So.2d 942, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1138. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. Baker v. Stanley Evans Logging, supra.
The WCJ's decision to impose or deny forfeiture under La. R.S. 23:1208 is a factual finding which will not be disturbed on appeal absent manifest error. Brooks v. Madison Parish Service District Hospital, 41,957 (La.App. 2d Cir.3/7/07), 954 So.2d 207, writ denied, XXXX-XXXX (La.5/18/07), 957 So.2d 155.

DISCUSSION
The issues on appeal are whether the WCJ erred in denying the defendants' fraud defense and in ordering the defendants to pay medical benefits for the claimant. Since the WCJ dismissed the claimant's assertions as to the first alleged incident, we address these issues only as they pertain to his alleged back injuries arising from the mower accident.
The defendants contend that the WCJ erred in denying their claim of fraud and misrepresentation by the claimant. They argue that the record shows malingering and drug-seeking behavior by the claimant, as well as numerous contradictions in his testimony on several issues. We agree.
As argued by the defendants, the evidence suggests that the claimant ceased seeing Dr. Brown because he refused to prescribe pain medications. Within days of his only appointment with Dr. Brown, he claimed to his insurance adjuster that an injection given by Dr. Brown's nurse caused him "jaw pain." He said he did not want to continue seeing Dr. Brown. In a letter to the adjuster, Dr. Brown stated that the injection could not have caused any such jaw pain; however, he noted that the claimant might have "some dental problems." At trial, the claimant said that the shot he was given during his November 2004 appointment made him "dizzy" and he dismissed Dr. Brown because of the shot. He also admitted having "complications" after June 2004 dental work. *257 In his deposition, the claimant stated that he dismissed Dr. Brown because he was "the company doctor."
According to Dr. Dean, the claimant's subjective complaints during his first office visit greatly exceeded the objective findings. Because the claimant said he could not get up on the exam table, Dr. Dean examined him while he sat in a chair. He found no evidence of a severe problem with the claimant's back; there was no real muscle spasm to palpate. Dr. Dean felt that the claimant's insistence that he could not flex his feet was not consistent with the ambulation he was doing.
The testimony of Dr. Dean demonstrated that the doctor was sufficiently suspicious of the claimant's presentation during his initial exam that he instructed his nurse to watch the claimant leave. Although the claimant left the office using a cane and had said he was unable to drive, the nurse reported that when he left, he picked up his cane, began to walk with a normal gait, and drove off. Interestingly, the claimant testified that his HIV doctor suggested the cane and that he did not use a cane before she recommended it; yet Dr. Jones' testimony demonstrated that her initial visit with him was after his first appointment with Dr. Dean.
Believing that the claimant had, at most, only a mild lumbar strain, Dr. Dean sent the claimant to physical therapy out of an abundance of caution. At the outset, the physical therapist noted that the claimant's subjective complaints differed from Dr. Dean's diagnosis. The therapist's experience with the claimant mirrored that of Dr. Dean in that his behavior in the clinic differed greatly from his actions in the parking lot. The therapist noted that the claimant was seen walking "with increased cadence" in the parking lot as opposed to his slow movements while in the clinic. He was also observed in the clinic assisting each leg with his upper extremity to put on his shoes; however, when it came to getting into his GMC Jimmy vehicle, the claimant did not need any assistance with his lower extremities and actually got into the vehicle "with ease."
According to the claimant's testimony, he and Dr. Dean became "upset" with each other and had an "altercation" over his medication. When Dr. Dean said he would only prescribe Tylenol III, the claimant recounted telling the doctor he needed more than that because he was in tremendous pain. The claimant accused Dr. Dean of "cussing" him out. Dr. Dean described the claimant as wanting more pain medication at his secondand finaloffice visit; however, he would not give the claimant Lortab, but only Tylenol III until he could see Dr. Brown again. Dr. Dean's testimony does not indicate that there was any altercation. Finding nothing to treat on this patient, Dr. Dean released him to return to regular work as of January 24, 2005.
Dr. Jones testified that she treated the claimant only for his HIV condition. However, at his request, in April 2005, she wrote a note "to whom it may concern" to document that he had an injury and was unable to work due to his pain medications. The note recounted that he had fallen from an eight-foot ladder at work, hurting his back; Dr. Jones testified that this statement was based on a history the claimant gave her. On cross-examination, the claimant admitted that he had no such history of falling off a ladder.[3] Dr. Jones *258 began occasionally prescribing Lortab for him in July 2006 because he told her that Dr. Patterson would no longer give him any pain medication. She was unaware that Dr. Dean had refused to give him this drug or that he had released the claimant to return to full duty in January 2005. She admitted that had she known this, she would not have given him the prescriptions and she would have had to consider that his actions might be drug-seeking behavior.
The claimant testified that prior to the mower accident, he never had weakness down into his legs and back pain. However, the claimant had been involved in an auto accident in February 2002; the medical reports pertaining to the injuries he suffered in that accident showed that he complained of back pain with weak legs.
We find that the WCJ's conclusion that the defendants failed to prove their fraud/misrepresentation claim is unreasonable and manifestly erroneous. There can be little question that the claimant repeatedly and willfully made false statements and representations. The nature of the claimant's malingering was such that these false statements and representations certainly cannot be deemed "inadvertent" or "inconsequential." The claimant's representation to Dr. Dean of his abilities was not consistent with his actual abilities as observed by the physical therapist and the nurse. As to the requirement that the false statements or representations be made for the purpose of obtaining any benefit, drugs qualify as a workers' compensation benefit that the claimant lied to secure. Leonard v. James Industrial Constructors, XXXX-XXXX (La.App. 1st Cir.5/14/04), 879 So.2d 724, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1139. The record strongly indicates that the claimant was seeking pain medications under false pretenses from multiple doctors on multiple occasions. He attempted to minimize or deny prior back or leg pain, only to be confronted with proof otherwise. While the claimant's motives for requesting the letter from Dr. Jones are unknown, his false claim to her that he sustained a work-related injury falling from a ladder is indicative of his willingness to manipulate his doctors for his own purposes.
The present situation differs from Reynolds Industrial Contractors v. Fox, 41,051 (La.App. 2d Cir.6/28/06), 935 So.2d 783, where a claimant was occasionally seen not using her cane on surveillance tapes, and Palmer v. Schooner Petroleum Services, 2002-397 (La.App. 3d Cir.12/27/02), 834 So.2d 642, writ denied, XXXX-XXXX (La.4/21/03), 841 So.2d 802, in which videotapes showed "some variance" between a claimant's testimony and the activities shown on the videotapes. Here the claimant presented himself to health care professionals in such an exaggerated manner that they quickly recognized the incongruities; he then immediately demonstrated noteworthy improved abilities as soon as he exited their facilities.
There is no conflict in the medical evidence in this case. No physician contradicts Dr. Dean's assessment that the claimant was able to return to full work duties by the end of January 2005 at the latest. Dr. Jones stressed in her testimony that she treated the claimant only for his HIV condition. On the issue of disability, she specifically stated that she would defer to the treating orthopedist.
Inasmuch as we find that the claimant violated La. R.S. 23:1208, we hold that his right to compensation benefits is forfeited.[4] *259 Accordingly, we reverse the WCJ's rulings which denied the defendants' fraud defense and ordered them to pay the claimant medical benefits arising from the mower incident.

CONCLUSION
The WCJ's ruling on the denial of the defendants' fraud claims is reversed, as is her ruling ordering that the claimant is entitled to medical treatment for his low back injuries. Judgment is rendered in favor of the defendants, dismissing the claimant's suit with prejudice. Costs of this appeal are assessed to the claimant.
REVERSED AND RENDERED.
NOTES
[1] It was noted in his chart that the injection could not have caused jaw pain. However, trial testimony from the claimant's work supervisor revealed that in June 2004 the claimant had dental work and that he subsequently complained of problems with his hands and arms. Lance Joslin, MSE's maintenance manager, testified that the claimant asserted that the dentist had "poisoned" him and that he was going to sue the dentist.
[2] A physical therapist who saw the claimant on January 6 and 10, 2005, noted similar inconsistencies in the claimant's ability to walk in the clinic, as opposed to in the parking lot.
[3] The only other reference to a ladder in the record involved one of the claimant's safety violations. According to MSE's internal report, the claimant needed a ladder being used by another employee. The claimant shook the ladder while the man was near the top; fortunately, he was able to hold on to something to keep from falling.
[4] Even assuming arguendo that the defendants failed to prove fraud pursuant to La. R.S. 23:1208, we find that the claimant did not prove that he had any injury beyond the end of January 2005. Neither of the orthopedic doctors who examined the claimant found that he had any serious injury. Dr. Dean, who saw the claimant twice, as opposed to the one visit with Dr. Brown, testified that, at most, the claimant had a mild lumbar strain which had resolved by January 24, 2005. Therefore, the defendants would not have been responsible for any medical benefits beyond that date.