GASKINS, J.
 

 hThe claimant, Fred D. Kidd, Sr., appeals from a ruling by a Workers’ Compensation Judge (WCJ) dismissing his claim for permanent disability benefits. The claimant was also found to have committed fraud in violation of La. R.S. 23:1208 and was ordered to pay restitution of indemnity benefits, medical benefits and attorney fees. For the following reasons, we affirm the judgment.
 

 FACTS
 

 Mr. Kidd has a history of injuries to his right shoulder; he had filed prior workers’ compensation claims as a result. In 1989, while working as an alignment and brake specialist at Firestone, Mr. Kidd slipped and fell, injuring his right shoulder. He had three shoulder surgeries from December 1989 through September 1990 which included repair of the shoulder and a torn rotator cuff. He then had unsuccessful physical therapy and was released to return to work in January 1991. However, he did not return to work.
 

 In January 1992, Mr. Kidd was released by his treating physician because his treatment and outcome were compromised by his low tolerance for pain and fear of anesthesia. He was assigned a 10-20 percent impairment of the upper right arm. In November 1992, after treatment by another physician and little progress with physical therapy, Mr. Kidd was assessed with a 28 percent disability of his right upper extremity. In August 1993, Mr. Kidd went to the emergency room complaining that he fell on his right shoulder while mowing a lawn. Treatment by other physicians was not | ¡¡successful and an MRI failed to reveal the source of the pain. At one point, a physician recommended a psychological evaluation for Mr. Kidd.
 

 Mr. Kidd received a workers’ compensation judgment for his 1989 fall at Firestone. On April 9, 1996, the parties entered into a compromise settlement agreement for $36,136.45. In February 1997, Mr. Kidd went to work for Scott Cummins Salvage. Mr. Kidd admitted that he lied about his physical condition and educational background on his application. He said that he believed that he would not be hired if he told the truth. He worked there for a short time and then went to work for Brown Radiator and Frame (Brown).
 

 After working for Brown for several years, Mr. Kidd asserted that he suffered another fall and shoulder injury at work on September 9, 2002. This injury is the basis for the present dispute. Mr. Kidd claimed that, while going out on an alignment rack to get an air hose, his feet went out from under him and he fell on the crossbeam of the alignment rack, injuring his right shoulder and arm. He stated that his coworkers, Chris Tramble, Mike Tramble, and Mitchell Jordan, were nearby when the accident occurred.
 

 Mr. Kidd gave an inconsistent version of the accident in his deposition. At some points, he claimed that he fell on the rack beam. At other times he stated that he fell completely down into the pit under the rack. His testimony also varied regarding the severity of the impact on his shoulder. In one instance, he claimed that his shoulder was dislocated. This claim was never corroborated by the medical evidence.
 

 laThe testimony of his witnesses was not entirely consistent with Mr. Kidd’s version of the accident. Chris Tramble acknowledged witnessing Mr. Kidd’s fall and as
 
 *1247
 
 sisting him up afterwards, although he made contradicting statements indicating that he did not see the mishap.
 
 Kidd v. Brown Radiator and Frame,
 
 38,729 (La. App. 2d Cir.12/22/04), 890 So.2d 796,
 
 writ denied,
 
 2005-0172 (La.3/24/05), 896 So.2d 1042. Mr. Kidd and Chris Tramble stated that Mike Tramble and Mitchell Jordan, the shop foreman, were nearby and that Mr. Jordan asked Mr. Kidd if he was okay. Mike Tramble denied witnessing the fall, but admitted observing Mr. Kidd get up from a lying down or seated position holding his shoulder on the day of the accident. Mr. Jordan denied witnessing or knowing about Mr. Kidd’s accident until after receiving notice of the workers’ compensation claim in November 2002. Mr. Jordan did recall that Mr. Kidd complained of a “crick” in his neck during September or October 2002.
 
 Kidd v. Brown Radiator and Frame, supra.
 

 Mr. Kidd continued to work for a couple of weeks after the alleged accident. He went to the emergency room on September 22, 2002, complaining of a sore throat, a stiff and painful neck on the right side, and hypertension. He did not initially tell his treating physicians that he was hurt at work. Mr. Kidd worked at Brown until late October 2002. He filed his claim for temporary, total disability benefits in November 2002.
 
 Kidd v. Brown Radiator, supra.
 

 After a hearing before a WCJ, a judgment was signed on November 17, 2003, finding that a work-related accident had occurred and awarding Mr. [4Kidd temporary, total disability benefits of $416.00 per week from January 7, 2003, through August 24, 2003. Mr. Kidd’s claims for mileage and reimbursement were denied for failure to meet his burden of proof. His claims for attorney fees and penalties were denied. The WCJ ordered an independent medical examination (IME) because there was a question as to whether continuing problems with the shoulder were work-related or attributable to degenerative changes.
 

 Although temporary, total disability benefits were granted, the WCJ found:
 

 When looking at that situation and other evidence that’s been presented to me today, I don’t find that the claimant is the most credible person that I’ve had come before me. Information indicates that he lied on applications with Scott Cummins, and he lied to the Social Security Administration. He had conflicts in his deposition testimony, and it may even be a situation that he lied to this Court about whether he was working for one, C & J Barbeque and Scott Cum-mins, at that same time that he was telling me that he was unable to work during that prior proceeding....
 

 The only person that testified they actually witnessed the accident was one, Chris Tramble. I must say that I was impressed with the testimony of Mr. Tramble and felt that he actually corroborated the statements of the claimant. ...
 

 The other person whose testimony I was impressed with was the testimony of Mitchell Jordan. Mr. Jordan said that he found the claimant to be a hard worker.... Now, Mr. Jordan said he didn’t see a slip-and-fall, but one thing Mr. Jordan did notice there was something going on with Mr. Kidd’s neck during the month of September and October. Something occurred....
 

 Brown appealed that ruling. In an unpublished opinion, this court found that the rulings of the WCJ, awarding benefits but also ordering an IME, were incongruent and interlocutory and therefore, not an appealable | ¡¿final judgment. We dismissed the appeal and remanded the matter for further proceedings.
 
 Kidd v. Brown Ra
 
 
 *1248
 

 diator and Frame,
 
 38,729 (La.App. 2d Cir.7/2/04), 877 So.2d 358,
 
 writ granted,
 
 2004-1961 (La.11/15/04), 887 So.2d 463. Brown took writs to the Louisiana Supreme Court. On November 15, 2004, that court granted the writ application and reversed our ruling. The supreme court remanded the case to this court for an opinion on the merits.
 

 On December 22, 2004, this court affirmed the WCJ’s ruling that there was sufficient evidence of a work-related accident and that Mr. Kidd’s disability was caused by the accident. We also affirmed that part of the judgment granting temporary, total disability benefits and ordering an IME. Brown again took writs to the Louisiana Supreme Court; that application was denied.
 
 Kidd v. Brown Radiator and Frame,
 
 39,729 (La.App. 2d Cir.12/22/04), 890 So.2d 796,
 
 unit denied,
 
 2005-0172 (La.3/24/05), 896 So.2d 1042.
 

 After the WCJ awarded temporary, total disability benefits, Mr. Kidd had additional surgery on his shoulder to repair the rotator cuff. In July 2005, Mr. Kidd filed a petition for benefits claiming that he is permanently and totally disabled as a result of his injury while working at Brown. He asked for penalties and attorney fees claiming Brown was aware of his permanent disability and refused to pay benefits.
 

 On October 30, 2006, Brown filed a petition against Mr. Kidd claiming that he made false statements and representations in his original claim for temporary, total disability benefits and sought restitution of ^benefits as well as attorney fees. Mr. Kidd’s claim for permanent, total disability benefits and Brown’s claim for forfeiture of benefits based on fraud were consolidated. A hearing on these issues was held on April 24, 2008.
 

 Regarding his permanent disability claim, Mr. Kidd testified that he can no longer perform the work he was doing at Brown and that he has pain in his shoulder three to four days per week. He stated that he stopped physical therapy because he does not always have transportation. The IME by Dr. Robert Holladay showed that, more likely than not, Mr. Kidd had rotator cuff tears in the shoulder before the accident at Brown and that he has only a mild aggravation of a preexisting condition.
 

 In support of its fraud claim, Brown presented the testimony of Elizabeth Ray-etta Robinson, Mr. Kidd’s former girlfriend. Ms. Robinson stated that she had been in a relationship with Mr. Kidd for seven years. She testified that Mr. Kidd was not injured at Brown. According to Ms. Robinson, Mr. Kidd fell from a ladder while trimming hedges in his yard and injured his shoulder. He told her that he was tired of working and this would be a good way not to have to work. Shortly thereafter, Mr. Kidd claimed that he fell and was injured while working at Brown. Ms. Robinson helped Mr. Kidd fill out paperwork for his workers’ compensation claim. Ms. Robinson claimed that Mr. Kidd coached Chris Tramble as to how he should testify in the 2003 hearing. Ms. Robinson stated that Mr. Kidd paid $300 to another witness, Bo Eleam, for his testimony at the workers’ compensation hearing.
 

 |7Ms. Robinson said that Mr. Kidd is not disabled. She stated that he uses a walking stick and shakes hands with his left hand only when he is out in public. According to her, Mr. Kidd can do anything with his right hand that he wants to do. Ms. Robinson related an incident which occurred while the temporary, total disability benefit claim was pending in which she had a broken water pipe at her house. Mr. Kidd dug out the pipe and repaired it. Because they knew that Brown had them under surveillance, Ms. Robinson stood
 
 *1249
 
 watch while Mr. Kidd performed the work. She said that he also replaced a power steering belt on her car. Ms. Robinson related that, during an argument, Mr. Kidd was able to hold her down on the ground. According to Ms. Robinson, Mr. Kidd had no trouble accomplishing these strenuous tasks.
 

 During the course of the temporary, total disability proceedings, Ms. Robinson said that she contacted the attorney who was then representing Brown and told her that Mr. Kidd was not injured at work. Ms. Robinson was subpoenaed to be a witness in May 2006 at a hearing involving the claim by Mr. Kidd for additional benefits. She was not served with the subpoena. However, on May 12, 2006, a couple of days before the hearing, Mr. Kidd contacted her and asked her to come to his house. When she went to his door, Mr. Kidd asked, “Why are you doing this? Why are you doing me like this?” She turned and walked toward the street; he came after her and shot her. He went into his house and made a phone call. When he came back to her, he was talking on the phone and mentioning a small car. As the | ^police arrived, he said, “Baby, please tell them it was a drive-by.” Criminal charges are pending against Mr. Kidd arising out of the shooting.
 

 Mr. Kidd denied that he fell off a ladder. He claimed that Ms. Robinson was given to fits of rage. He said that she was angry because he did not give her any money from his workers’ compensation claim.
 

 Chris Tramble testified that Mr. Kidd did not tell him what to say in court at the prior hearing. Several character witnesses were called on behalf of Mr. Kidd. Some of the witnesses stated that Ms. Robinson had a volatile temper and that she was “crazy.”
 

 At the close of the hearing, the WCJ noted her misgivings in 2003 about Mr. Kidd’s credibility. The initial impression of lack of credibility, coupled with Ms. Robinson’s testimony, convinced the WCJ that Mr. Kidd had committed fraud. The WCJ found that Mr. Kidd made willful misrepresentations to the court for the purpose of obtaining benefits when he staged an accident at Brown and when he initiated proceedings to deliberately mislead the court. The WCJ stated that she believed the claimant fell from a ladder at home and injured his shoulder. She found that Mr. Kidd coached witnesses to testify on his behalf and coached Ms. Robinson to create documents on his behalf which were false. The WCJ stated that Mr. Kidd lied about the preexisting condition of his shoulder and about his involvement in other workers’ compensation claims. The WCJ ordered that all benefits be forfeited and that restitution be made of benefits previously paid. Mr. Kidd was also required to pay attorney fees and costs of litigation to Brown.
 

 | qA judgment was signed by the WCJ on May 8, 2008, dismissing Mr. Kidd’s claims against Brown based on the finding that he committed fraud in violation of La. R.S. 23:1208. He was ordered to pay restitution of indemnity benefits in the amount of $14,248.41, medical expenses of $7,157.30, and attorney fees of $10,000.00.
 

 During the trial, Mr. Kidd was represented by retained counsel. On appeal, he has been allowed to proceed
 
 informa pau-peris.
 
 His attorney withdrew; he now appeals the judgment in proper person.
 

 Mr. Kidd argues that the WCJ erred in denying his claim for benefits. He claims that the WCJ erred in allowing Ms. Robinson to testify because she had outstanding warrants and restraining orders. He also claims that the WCJ erred in considering this matter because his claim for benefits
 
 *1250
 
 has been before this court and the supreme court on two prior occasions.
 

 DENIAL OF BENEFITS
 

 Mr. Kidd argues that the WCJ erred in denying his claim for permanent, total disability benefits for the injury allegedly sustained at Brown. Mr. Kidd has not alleged that the WCJ erred in denying his claim based on the finding that he committed fraud. However, because the denial of Mr. Kidd’s claim was based upon the finding that he committed fraud, we will discuss these issues together.
 

 Legal Principles
 

 Misrepresentation and forfeiture under the Workers’ Compensation Act are regulated by La. R.S. 23:1208 which states, in pertinent part:
 

 A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the [ inprovisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
 

 E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
 

 The only requirements for a forfeiture of benefits under this statute are: (1) a false statement or representation; (2) willfully made; and (3) made for the purpose of obtaining or defeating any benefit or payment.
 
 Resweber v. Haroil Construction Company,
 
 1994-2708 (La.9/5/95), 660 So.2d 7;
 
 Thomas v. Hollywood Casino,
 
 44,271 (La.App. 2d Cir.5/13/2009), 13 So.3d 717. All three requirements must be present before a penalty will be imposed.
 
 Gilcrease v. Wal-Mart Stores, Inc.,
 
 36,523 (La.App. 2d Cir.12/11/02), 843 So.2d 415. .There is no requirement of prejudice to the employer; when the statute is satisfied, benefits will be forfeited for the sole reason that the claimant has willfully and deliberately attempted to defraud the workers’ compensation system, and no further requirements are to be imposed.
 
 Freeman v. Chase,
 
 42,716 (La. App. 2d Cir.12/5/07), 974 So.2d 25.
 

 Forfeiture is a harsh remedy and must be strictly construed. An inadvertent and inconsequential false statement will not result in forfeiture of benefits. La. R.S. 23:1208 does not penalize any false statement, but only those willfully made for the purpose of obtaining benefits. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits.
 
 Slater v. Mid-South Extrusion,
 
 43,343 (La.App.n 2d Cir.8/13/08), 989 So.2d 252. The WCJ’s finding or denial of forfeiture will not be disturbed on appeal absent manifest error.
 
 Thomas v. Hollywood Casino, supra; Slater v. Mid-South Extrusion, supra.
 
 Under this standard, if the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Baker v. Stanley Evans Logging,
 
 42,156 (La.App. 2d Cir.6/20/07), 960 So.2d 351,
 
 writ denied,
 
 2007-1817 (La.12/14/07), 970 So.2d 533;
 
 Hubbard v. Allied Building Stores, Inc.,
 
 41,534 (La.App. 2d Cir.11/1/06), 942 So.2d 639.
 

 Discussion
 

 Mr. Kidd testified that he had more surgery on his shoulder after he was awarded temporary, total disability benefits and that he is now unable to do any work as a result of his alleged accident at
 
 *1251
 
 Brown. However, the IME report showed that Mr. Kidd had a mild aggravation of a preexisting condition. This evidence and testimony were not sufficient to establish Mr. Kidd’s entitlement to permanent, total disability benefits.
 

 Even if Mr. Kidd had shown entitlement to permanent, total disability benefits, the WCJ found that he made fraudulent misrepresentations in order to obtain workers’ compensation benefits. As a consequence, his present claim was denied and he was ordered to return benefits previously received.
 

 Although forfeiture of benefits is a harsh remedy, we find that the WCJ was not manifestly erroneous in finding that Mr. Kidd violated La. R.S. 23:1208 and forfeited any right he may have had to workers’ | ^compensation benefits. The WCJ believed the testimony of Ms. Robinson wherein she stated that Mr. Kidd was not injured at Brown, but rather fell off a ladder at home. The WCJ found credible the testimony that Mr. Kidd coached his witness in the prior trial to testify that he saw the accident and that Mr. Kidd got Ms. Robinson to prepare documents for him falsely claiming that he was injured while working at Brown. The WCJ accepted Ms. Robinson’s testimony that Mr. Kidd shot her to prevent her from testifying in a subsequent hearing that he was not injured while working at Brown. This provided more than a sufficient basis for denying Mr. Kidd’s claim for permanent, total disability benefits and ordering that he return indemnity and medical benefits previously received. The WCJ did not err in her ruling and we affirm.
 

 WITNESS TESTIMONY
 

 Mr. Kidd argues that the WCJ erred in allowing Ms. Robinson to testify because she had outstanding warrants and restraining orders arising out of confrontations with him. In support of his argument, he attached copies of police reports regarding some charges against Ms. Robinson that he asserts arose from her violent behavior toward him. He also contends that the WCJ did not take note of a complaint he filed with the Louisiana Attorney Disciplinary Board against Brown’s former attorney. These arguments are without merit.
 

 Legal Principles
 

 An appellate court may not consider evidence not contained in the record either because it has been unsuccessfully offered into evidence or not | ^offered at all.
 
 Britton v. Morton Thiokol, Inc.,
 
 604 So.2d 130 (La.App. 2d Cir.1992). An appellate court may not consider documents attached to briefs which have not previously been introduced into evidence in the trial court.
 
 United Companies Financial Corporation v. Austin,
 
 92-653 (La.App. 3d Cir.5/5/93), 618 So.2d 7.
 

 The failure to object to any testimony at trial waives the right to challenge it on appeal.
 
 Osborne v. McKenzie,
 
 43,658 (La.App. 2d Cir.10/22/08), 998 So.2d 137,
 
 writ denied,
 
 2008-2555 (La.1/9/09), 998 So.2d 726;
 
 Breitenbach v. Stroud,
 
 2006-0918 (La.App. 1st Cir.2/9/07), 959 So.2d 926;
 
 Parker v. Parker,
 
 44,246 (La.App. 2d Cir.5/13/09), 12 So.3d 485;
 
 Graves v. Riverwood International Corp.,
 
 41,810 (La. App. 2d Cir.1/31/07), 949 So.2d 576,
 
 writ denied,
 
 2007-0603 (La.5/4/07), 956 So.2d 621.
 

 Discussion
 

 The documents regarding warrants and restraining orders against Ms. Robinson and Mr. Kidd’s complaint against Brown’s former attorney were not raised in the proceedings below and were not filed into evidence. They were merely attached to Mr. Kidd’s brief filed in this court. There
 
 *1252
 
 fore, these documents are not properly before this court and may not be considered in the appeal of this matter.
 

 [11] The fact that Ms. Robinson had outstanding warrants or restraining orders against her would not disqualify her as a witness. Evidence of her contentious relationship with Mr. Kidd might relate to her credibility. Mr. Kidd provided adequate evidence in that regard in the hearing.
 

 luPRIOR CONSIDERATION
 

 Mr. Kidd contends that this matter had been before this court and the supreme court on two prior occasions. Although he has made no argument in his brief concerning this assignment of error, it appears that he is either claiming that the matter is
 
 res judicata
 
 or that the WCJ did not have jurisdiction to hear the present matter. These contentions are without merit.
 

 Mr. Kidd’s counsel below pled the exception of
 
 res judicata
 
 which was denied by the WCJ, who reasoned that the present case concerned issues of permanent, total disability benefits and forfeiture of benefits due to misrepresentation, claims that had not been heard previously.
 

 La. R.S. 23:1310.8 provides in pertinent part:
 

 A. (1) The power and jurisdiction of the workers’ compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified, including the right to require physical examinations as provided for in R.S. 23:1123; however, upon petition filed by the employer or insurance carrier and the injured employee or other person entitled to compensation under the Worker’s Compensation Act, a workers’ compensation judge shall have jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition, subject to the provisions of law relating to settlements in workers’ compensation cases.
 

 B. Upon the application of any party in interest, on the ground of a change in conditions, the workers’ compensation judge may, after a contradictory hearing, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers’ Compensation Act, and shall state his conclusions of fact and rulings of law, and the director shall immediately send to the parties a copy of the award.
 

 11sThe WCJs have the power to annul prior judgments which are based on fraud or misrepresentation. See
 
 Martin v. Red Simpson, Inc.,
 
 96-1177 (La.App. 3d Cir.3/12/97), 692 So.2d 635.
 

 The matters considered in these cases, one filed by Mr. Kidd and one filed by Brown, had not been presented to the WCJ previously. Further, the WCJ had the authority, under La. R.S. 23:1310.8, not only to deny the present claim for permanent, total disability benefits, but also to annul the prior judgment awarding temporary, total disability benefits based upon the fraud and misrepresentations committed by Mr. Kidd. The WCJ did not err in considering the issues raised in this matter, in denying permanent, total disability benefits to Mr. Kidd, and in ordering the forfeiture of benefits previously awarded based upon the misrepresentations made by Mr. Kidd.
 

 
 *1253
 
 CONCLUSION
 

 For the reasons stated above, we affirm in all respects the decision of the WCJ. Costs in this court are assessed to the appellant, Fred D. Kidd, Sr.
 

 AFFIRMED.