954 So.2d 207 (2007)
Dorothy BROOKS, Plaintiff-Appellee
v.
MADISON PARISH SERVICE DISTRICT HOSPITAL, Defendant-Appellant.
No. 41,957-WCA.
Court of Appeal of Louisiana, Second Circuit.
March 7, 2007.
*209 Donald J. Anzelmo, Monroe, for Appellant.
S. Douglas Brusari, for Appellee.
Before WILLIAMS, DREW and LOLLEY, JJ.
WILLIAMS, Judge.
In this workers' compensation case, the employer, Madison Parish Service District Hospital, appeals a judgment in favor of the claimant, Dorothy Brooks. The workers' compensation judge (WCJ) awarded the claimant supplemental earnings benefits ("SEB"), medical treatment and vocational rehabilitation services. For the following reasons, we affirm.

FACTS
The forty-six year-old claimant was employed by the hospital as a mental health technician. On July 30, 2004, while at work, she slipped and fell in a puddle of liquid on the floor. Just after the accident, the supervisor on duty, Betty Clark, saw claimant lying on the floor. Ms. Clark said that claimant was obviously in pain and was unable to get up on her own. Ms. *210 Clark said that prior to the accident, claimant generally was very busy at the hospital taking care of patients, "just running the whole time," and that she was not aware that claimant ever had problems with her knees.
Ms. Clark accompanied claimant to the emergency room at the hospital. The ER record from that date indicates that claimant's chief complaints were pain in her left knee and left leg. The doctor diagnosed her with a contusion of the left knee and treated her with painkillers and a knee wrap. She returned to the ER on August 3, 2004, complaining of soreness to her body and extremities. She was given Vioxx and instructed to follow up with her family physician.
On August 12, 2004, the claimant went to see Dr. Donald Perry, her family doctor, with a complaint of pain in her left knee, lower back and right leg. Dr. Perry ordered an MRI of claimant's left knee. The MRI revealed a partial tear of the medial meniscus and moderate to severe chronic degenerative osteoarthritis in that knee. Dr. Perry suggested that claimant see an orthopedist in Vicksburg, Mississippi, for her complaints of pain. The claimant testified that her employer would not cover care provided out of state, so Dr. Perry sent her to see Dr. Douglas Brown in Monroe. In the meantime, claimant returned to the Madison Parish Hospital ER on September 22, 2004, with continued complaints of pain in her left knee; she was treated with painkillers.
Claimant's first visit with Dr. Brown was on September 23, 2004; at that time, she was using crutches for mobility. Before her examination, claimant completed a health questionnaire wherein she described her accident and the resulting injuries as follows:
Slipped in liquid on floor. Right leg went straight out(,) fell on left knee and right fist, back popped in fall also.
On a body diagram in the same questionnaire, she indicated the types and locations of her current symptoms. She indicated that she had aching on the front side of her left knee and numbness radiating down her lower left leg toward her ankle. With an "x," she identified this area as having worse pain than other areas. She also indicated with an "x" that she had worse aching pain in the lower right side of her back, in her right wrist and in the rear of her right knee. In addition, she reported aching and numbness in the rear of both knees with the numbness radiating down the back of both lower extremities. She rated her pain as a "7" on a 0-10 scale. On another form, she indicated that she had numbness in her left leg at times, and there is a notation stating "right knee buck." She also reported that she exercised by walking, dancing and doing aerobics.
In his handwritten notes from that first visit, Dr. Brown described claimant's chief complaint as "(L) knee pain & (R) knee pain." The history reported by the doctor stated in part that claimant "land[ed] on her knees and right wrist twisting her low back." The doctor examined an x-ray of "the knee" (presumably the left knee) taken close to the time of the accident and observed a small buckle fracture. X-rays of her left knee taken at claimant's visit on September 23rd showed that this injury had healed; x-rays of her right wrist, lumbar area and left ankle were normal. At that visit, the doctor's impression was that claimant had a left ankle sprain, a right wrist strain, a lumbar strain and a healed buckle fracture in her left knee. The doctor gave claimant a knee brace, presumably for her left knee, ordered physical therapy and directed her to remain off work for four weeks.
*211 On October 15, 2004, the claimant returned to see Dr. Brown, who noted no change in claimant's left knee and noted that she had "some posterior discomfort" in her right knee. Dr. Brown injected both of claimant's knees with painkiller and a steroid. He allowed claimant to return to work, "sitting primarily," and again directed her to attend physical therapy. The doctor also wrote:
If there is no marked improvement then she will need a left knee arthroscopy due to the posterior horn medial meniscal tear on the left and also will need a right knee MRI which has not been done.
In an October 2004 note, Dr. Brown indicated that claimant had participated in physical therapy and continued to feel lumbar spine and knee pain; the doctor recommended an additional four weeks of physical therapy.
On October 29, 2004, Dr. Brown saw the claimant, who continued to complain of left knee pain. She agreed to arthroscopy of her left knee. She also complained of right knee pain and lower back pain radiating down both legs and stated that physical therapy had not helped her symptoms. In the Plan section, the doctor wrote "MRI of the right knee and lumbar spine will be scheduled. We will also schedule her for a left knee scope." On that same day, claimant executed a choice of physician form selecting Dr. Perry as her family doctor and Dr. Brown as her orthopedist.
On November 22, 2004, Dr. Brown performed arthroscopic surgery on claimant's left knee. In December 2004, the claimant saw Dr. Brown with continued complaints of right knee pain. Dr. Brown prescribed an antibiotic and instructed claimant to begin physical therapy in five days. Claimant testified that physical therapy was provided for both knees and for her back, but her symptoms did not improve.
On January 27, 2005, Dr. Brown wrote a progress note stating that claimant had trigger thumb pain that had not improved despite conservative treatment and that her knee (which knee is not noted) clicks with physical therapy. In regard to the unspecified knee, the doctor stated that claimant had "mild patella femoral impingement which should improve with rehab." Dr. Brown performed trigger thumb release surgery on March 31, 2005.
There are no subsequent records showing that claimant was seen by Dr. Brown for a post-operative examination. The claimant testified that Dr. Brown briefly saw her once after the surgery but he did not follow her progress. Claimant testified that the knee surgery did not relieve her pain, and that the thumb surgery provided "very little" relief.
On April 24, 2005, Dr. Brown faxed answers to a health questionnaire about claimant to Summit, the workers' compensation administrator for the employer. Dr. Brown wrote that he had seen claimant on April 21, 2005, and opined that she had reached maximum medical improvement from her employment injury. Dr. Brown released claimant to return to work at full duty. He gave claimant a 5% "PPI" rating for her unspecified knee. He also recommended vocational rehabilitation services for claimant in the event she was not able to return to her pre-injury employment.
On May 2, 2005, claimant went to see Dr. Perry for a check-up. At that visit, she complained of pain in both her left and right knee. She also reported a concern about being released back to work after her thumb surgery. Dr. Perry advised claimant to return to Dr. Brown, but on May 12, 2005, Dr. Perry noted that claimant stated she was unable to see Dr. Brown, who said there was nothing else *212 that he could offer her. In June 2005, claimant filed a disputed claim for compensation with the Office of Workers' Compensation ("OWC").
On September 12, 2005, claimant saw Dr. Jose Ferrer, an orthopedic surgeon, in Vicksburg, Mississippi. She paid for this visit through her husband's health insurance and personal funds. The doctor's report from that date states, in part:
This is a 47-year old woman that fell at home on 8/1/05 and injured both knees and her back. Since then she has had severe bilateral knee pain, worse on the left than on the right as well as low back pain. She had surgery on her left knee in November 2004 and arthroscopic debridement but apparently did not help her much.
Claimant testified that she told Dr. Ferrer's nurse about her fall at work in 2004 and said:
And I had told her also about the knee weaknesses. The last one that I experienced was in 8/05 where my knees went to the  you know, tighten and shake and then they give way. And that's all I could remember.
She also testified:
I haven't had an accident,. . . . Just going to [the] floor, but I did that off and on. And when my knees got weak, I was in a position to where I could go down to the floor, but not a fall.
She explained that this is what she told Dr. Ferrer and his nurse. The doctor reviewed x-rays of both of claimant's knees and of her lumbar spine. Dr. Ferrer noted bilateral knee arthritis, ordered an MRI of claimant's lumbar area and gave her the first of three injections in her left knee to reduce her osteoarthritis pain. Dr. Ferrer stated in his deposition that claimant could have returned to work only under "very severe restrictions" including limitations on standing, walking, squatting, crawling, kneeling, jumping, running, bending or lifting more than 40 pounds. After the three shots, claimant returned to Dr. Ferrer on October 11, 2005, when the doctor noted that she was doing well and advised her to continue exercising.
Subsequently, an MRI was performed on claimant's back that showed spondylosis. Claimant saw Dr. Ferrer about this on November 30, 2005, and the doctor recommended a lumbar corset and decided to schedule steroid injections for claimant. Dr. Ferrer referred claimant to Dr. Shawn Mei, a pain management specialist. Dr. Mei's records reflect a history, stating in part:
The patient slipped and fell and landed on her knee on July 1 (sic), 2004. She subsequently injured her lower back and knee as well.
In December 2005, Dr. Mei concurred with Dr. Ferrer's recommendation for steroid injections. However, claimant did not have the injections because she did not have insurance and each shot cost $1,500.
Claimant returned to see Dr. Perry again on December 6, 2005, complaining of "stiffness all over." Dr. Perry's note reflected that claimant had seen Dr. Ferrer, and Dr. Perry recommended that she continue to see Dr. Ferrer. She saw Dr. Ferrer again on February 22, 2006, and Dr. Ferrer's note from that date reflected discussion of claimant's 2004 work injury. Claimant said that this discussion was prompted by her discovery that the previous injury had been omitted from Dr. Ferrer's records. Dr. Ferrer stated that the steroid injections were directly related to the work injury.
At his deposition in April 2006, Dr. Ferrer stated that claimant's arthritis was not the result of her fall at work, but was the result of a process that had been ongoing for five to ten years at least. However, *213 the doctor said that claimant's advanced knee arthritis had been aggravated by an injury and that it was common to have asymptomatic arthritis that becomes symptomatic when the joint is injured. Dr. Ferrer said that claimant's knees would continue to give her trouble for the rest of her life and estimated that, for her body as a whole, each knee represented a 10% impairment. He said that she had reached maximum medical improvement with her knees, but that she would probably need knee replacements in the future. The doctor's records did not contain enough information for him to conclude whether her knee problems were related to her work injury. He said that he could determine from his records that her back injury was related to the work injury and gave her a 5% whole body impairment due to the back injury. The doctor stated that he would not have been able to see claimant from the beginning had he known that her condition was possibly related to a workers' compensation injury, because apparently Mississippi state law required that such patients be certified.
At the time of the trial in April 2006, claimant testified that she was unable to work and was severely limited by pain in her day-to-day activities such as cooking or housework. She said that her knee pain prior to the accident was "on and off" whereas after the accident her knee pain was "all day, every day" and "severe." She also reported that her stomach did not tolerate the prescribed pain medication well and that she was generally unable to afford the medication at any rate. Her daughter, Carmaletta Brown, testified that prior to the accident her mother held two jobs but had not been able to work after the accident. Claimant's sister, Geneva Jones, testified that prior to the accident claimant was very active, but after the accident she was rarely able to participate in the activities they used to enjoy, such as exercise and walking. The claimant's husband, Freddie Brooks, stated that claimant worked two jobs prior to the accident. He said that on the night the accident happened, claimant told him that her knees, her back and her thumb were hurting. He also said that he was present when claimant told Dr. Brown about the pain in her back, both knees and thumb. Brooks testified that claimant's arthritis never affected her so severely prior to the accident as it did afterward. He stated that he was at home on August 1, 2005, and that claimant did not fall on that date; he said "She grabbed the door."
At the conclusion of the trial, the WCJ stated that great weight was given to the medical records and that she found claimant's testimony to be credible. The WCJ concluded that claimant's injuries were caused by her fall on July 30, 2004, because the evidence demonstrated that prior to the accident claimant had been able to pursue an active lifestyle, but afterward she was not able to participate in activities as she had become accustomed to doing. In addition, the WCJ found that whatever happened to claimant on August 1, 2005, was the result of her condition caused by the work-related fall. Thus, the WCJ concluded that claimant's problems with both of her knees, her back and her thumb were caused by the fall at work.
Noting Dr. Ferrer had opined that claimant could work only with severe restrictions, that no vocational rehabilitation services were initiated despite Dr. Brown's recommendation and that the employer had not offered claimant any modified position, the WCJ determined that claimant was incapable of earning at least 90% of her pre-injury wage as of September 12, 2005, the date of her first visit with Dr. Ferrer. In accordance with that finding, the WCJ ordered the employer to pay claimant SEB until it could demonstrate *214 that she was able to earn 90% of her pre-injury wage. The WCJ ordered the employer to pay for vocational rehabilitation for the claimant and changed her treating physician to Dr. Ferrer, finding that it would not be beneficial to claimant to return to Dr. Brown after he failed to see her for a post-surgical examination. The WCJ determined that claimant had not made any willful misrepresentations and that the hospital was not entitled to terminate her benefits, but was entitled to a credit for any payments that were also covered by medical insurance. The hospital appeals the judgment.

DISCUSSION
In three assignments of error, the employer contends the WCJ erred in concluding that claimant's right knee and back problems were caused by her work accident. The employer argues that claimant's testimony was not credible in light of contradictory objective medical evidence and physician records indicating a subsequent accident in August 2005.
Factual findings in workers' compensation cases are subject to the manifest error rule. Winford v. Conerly Corp., 04-1278 (La.3/11/05), 897 So.2d 560. Under this rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. Id.; Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). When there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Id. Thus, even when the appellate court is convinced it would have weighed the evidence differently had it been sitting as trier of fact, the court of appeal may not reverse if the factfinder's findings are reasonable in light of the record reviewed in its entirety. Id.; Williams v. Saint Gobain Containers, 39,313 (La.App. 2d Cir.1/26/05), 893 So.2d 144.
In its appellate brief, the employer has pointed out the evidence in the record tending to discredit claimant's version of events, including evidence (1) that claimant's medical problems, in particular her arthritis, predated the accident, (2) that several of claimant's medical history reports do not clearly reflect complaints of right knee and back pain, and (3) that claimant suffered a second accident on August 1, 2005. In viewing the record as a whole, however, we conclude the evidence supports the WCJ's finding of fact that the July 2004 accident caused the claimant's injuries which prevent her from working.
Unquestionably, claimant had experienced problems with her knees and her back prior to the July 2004 incident. Dr. Ferrer noted that claimant's arthritis was not caused by the incident, but instead was a problem that predated it by as much as ten years. However, the record contains ample evidence that before her work injury, the claimant's existing knee and back troubles were not disabling and did not cause any substantial impairment to her very active work and personal life. Dr. Ferrer explained that a traumatic injury frequently causes asymptomatic arthritis to cause problems for a patient, and the record supports that as the most reasonable interpretation of the evidence in this case.
A careful review of the medical records shows that claimant had a general complaint of pain all over her body shortly after the work accident and complained of pain in her right leg and back to her doctor only two weeks after the incident. The diagram that claimant completed for Dr. Brown at her first visit in late September 2004, approximately seven weeks after the incident, contains essentially all of the *215 health complaints that she described as resulting from the work accident. There is no omission in the medical records that suggests a suspiciously late onset of any symptom of pain related to injury to her right knee and back.
Finally, the record tends to support the WCJ's conclusion that the August 1, 2005 incident was not a new injury, but instead was the result of claimant's work accident. This August incident is primarily reflected in Dr. Ferrer's records, which are notably incomplete with regard to claimant's history of the work injury and indeed of her surgeries. The WCJ evidently accepted claimant's testimony that she corrected this omission when it was discovered.
An employer is liable for workers' compensation when the initial injury is aggravated by medical complications or a subsequent injury, if the complications are caused by the work-related injury. Bandy v. International Paper Co., 29,085 (La. App. 2d Cir.2/26/97), 690 So.2d 902, writ denied, 97-1101 (La.6/20/97), 695 So.2d 1354; Fields v. Sperry Rand Corp., 343 So.2d 339 (La.App. 2d Cir.), writs denied, 345 So.2d 902, 903 (La.1977). Claimant's testimony about the weakness in her knees after the July 2004 accident supports the finding of no new injury. Considering the medical evidence presented, the WCJ's decision to credit claimant's testimony was reasonable. Based upon this record, we cannot say the WCJ was clearly wrong in finding that claimant's injuries were caused by her fall at work. The assignments of error lack merit.
Supplemental Earnings Benefits
The employer contends the WCJ erred in awarding SEB to the claimant. The employer argues that the evidence presented did not support the award of such benefits because the claimant had been released to her pre-injury job without restriction by her treating physician.
A claimant is entitled to receive SEB if she sustains a work-related injury that results in the inability to earn 90% or more of her pre-injury wage. LSA-R.S. 23:1221(3)(a). The claimant bears the initial burden of proving, by a preponderance of the evidence, that the injury resulted in the inability to earn that amount, under the facts and circumstances of the case. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. If the claimant meets this burden, then the burden shifts to the employer to prove that the claimant is physically able to perform a certain job and that the job was offered to the claimant or that the job was available to her or within her or the employer's geographic region. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. If the employer satisfies that burden, then the claimant must show by clear and convincing evidence, unaided by any presumption of disability, that she is unable to perform the offered or available employment, solely as the result of substantial pain. LSA-R.S. 23:1221(3)(c)(ii); Payne v. Lawn Lourd Lawn Service, 35,491 (La.App. 2d Cir.12/5/01), 803 So.2d 321.
As of September 12, 2005, Dr. Ferrer opined that claimant could return to work only with a wide variety of restrictions, and Dr. Brown had already indicated that vocational rehabilitation would be necessary if claimant was not able to return to work as he recommended. As previously noted, although Dr. Brown had released claimant to return to work without restriction in early 2005, he failed to reexamine her after performing the second surgery and before releasing her to work. The WCJ was not manifestly erroneous in accepting the diagnosis and recommendation of Dr. Ferrer, who examined her more *216 recently. Given the combination of the doctors' recommendations, the WCJ was not clearly wrong to conclude that claimant would not be able to return to work and earn 90% of her pre-injury wages until her health problems were stabilized. The assignment of error lacks merit.
Rehabilitation Services
The employer contends the WCJ erred in ordering vocational rehabilitation services for claimant. The hospital argues that the WCJ was not authorized to order vocational rehabilitation because claimant did not request it in her claim for compensation.
LSA-R.S. 23:1226 provides that when an employee suffers an injury which precludes earning wages equal to the pre-injury wage, the employee shall be entitled to prompt rehabilitative services. Initially, we observe that the claimant's right to rehabilitation services was listed as one of the issues to be litigated in the employer's October 2005 pre-trial statement. Thus, the employer was aware that vocational rehabilitation was a potential issue.
The employer's argument that claimant is not entitled to rehabilitation services is largely based upon Dr. Brown's 2005 release of claimant to work without restriction. However, at the same time, Dr. Brown made the recommendation for rehabilitation services if needed, indicating that claimant was not ready for full duty. In addition, Dr. Brown released the claimant after surgery, without the benefit of any post-operative examination to assess her condition and despite the lack of an MRI of the right knee and lower back as he had recommended. Further, the work restrictions imposed by Dr. Ferrer were consistent with the need for rehabilitation services. Given the medical evidence of claimant's injuries and treatment, and considering her pre-accident ability to engage in work without substantial impairment, we cannot say the WCJ was clearly wrong in ordering vocational rehabilitation services for the claimant. The assignment of error lacks merit.
Choice of Physician
The employer contends the WCJ erred in appointing claimant's choice of orthopedic physician. The employer argues that there was no basis to designate Dr. Ferrer as treating physician because claimant failed to show evidence that Dr. Brown had refused to provide treatment.
LSA-R.S. 23:1203(A) mandates that an employer provide an injured employee with all necessary medical treatment. LSA-R.S. 23:1121 provides, in part:
B. (1) The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for [a] change to a treating physician in another field or specialty.
In the present case, the claimant chose Dr. Brown as her treating orthopedic surgeon. However, after performing the second of two surgeries upon the claimant, Dr. Brown did not examine the claimant again prior to releasing her to work at full duty. Dr. Perry's notes indicate that the claimant attempted to see Dr. Brown again, but was unable to do so because she was informed that Dr. Brown did not have any additional treatment to offer. Further, the MRI scans of claimant's back and right knee were not done while she was *217 under Dr. Brown's care. Under the circumstances and after finding that the claimant's work-related health problems still required treatment, the WCJ did not err in allowing claimant to see, at the employer's expense, the other physician who had treated her with some success. The assignment of error lacks merit.
Forfeiture of Benefits
The employer contends the WCJ erred in denying the defense of fraud. It is unlawful for a person to willfully make a false statement or representation for the purpose of obtaining workers' compensation benefits. LSA-R.S. 23:1208(A). A purported claimant who violates this rule forfeits his right to workers' compensation benefits. LSA-R.S. 23:1208(E). Pursuant to LSA-R.S. 23:1208, forfeiture of benefits is authorized upon proof that: (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Howard v. Holyfield Construction, Inc., 36,734 (La.App. 2d Cir.3/18/03), 839 So.2d 1277, writ denied, 03-1109 (La.6/6/03), 845 So.2d 1097, appeal after remand, 38,728 (La.App. 2d Cir.7/14/04), 878 So.2d 875, writ denied, 04-2303 (La.1/7/05), 891 So.2d 684. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. Id.
Forfeiture is a harsh remedy and must be strictly construed. Wise v. J.E. Merit Constructors, Inc., 97-0684 (La.1/21/98), 707 So.2d 1214; Johnikin v. Jong's, Inc., 40,116 (La.App. 2d Cir.9/21/05), 911 So.2d 413, writ denied, 05-2251 (La.2/17/06), 924 So.2d 1020. Nevertheless, the WCJ's decision to impose or deny forfeiture under § 1208 is a factual finding which will not be disturbed on appeal absent manifest error. Johnikin v. Jong's, Inc., supra; Graham v. Nissan, 39,656 (La.App. 2d Cir.6/29/05), 907 So.2d 213.
This record does not show that the claimant wilfully made any false statement during the course of treatment or during the legal proceedings. The WCJ specifically questioned the claimant regarding the discrepancies between her testimony and the medical records and claimant explained her communications with the doctors' offices. Although claimant previously complained of low back pain in May 2004, she testified that such pain occurred from fatigue after working all day and was less severe than the pain caused by her subsequent work accident. Regarding the September 2005 visit to Dr. Ferrer, claimant explained that Dr. Perry had referred her to Dr. Ferrer for treatment related to her work accident. Additionally, Dr. Mei's records referenced a work accident in July 2004.
The WCJ considered the conflicting evidence, heard the testimony and weighed the credibility of the witnesses. Based upon this record, we cannot say the WCJ was clearly wrong in finding no evidence of wilful misrepresentations in this case. The assignment of error lacks merit.
In her appellate brief, the claimant requests an award of attorney fees for work performed to answer this allegedly frivolous appeal. However, we note that claimant did not raise this issue by filing either an appeal or an answer to the appellant's appeal. Thus, this court may not assess any frivolous appeal damages, costs or attorney fees. Hill v. Cloud, 26,391 (La.App. 2d Cir.1/25/95), 648 So.2d 1383, writ not considered, 95-0486 (La.3/17/95), 651 So.2d 260.

CONCLUSION
For the foregoing reasons, the Office of Workers' Compensation judgment is affirmed. *218 Costs of this appeal are assessed to the appellant, Madison Parish Service District Hospital, to the extent permitted by law.
AFFIRMED.