GASKINS, J.
 

 12In this workers’ compensation case, the claimant appeals from a judgment finding that he committed fraud to obtain benefits in violation of La. R.S. 23:1208, ordering him to make restitution to his employer for all indemnity and medical payments made to him from January 18, 2004, to March 20, 2006, and dismissing his claims with prejudice. We affirm.
 

 
 *430
 
 FACTS
 

 The claimant, Randy Daniels, was employed by Hemphill Construction Company as a combination operator. On March 12, 2003, a few days after he began work for Hemphill, he was a passenger in a truck driven by Giddis Leon Temple, also a Hemphill employee and the claimant’s foreman, when the truck was involved in an accident in Monroe, Louisiana.
 
 [1]
 
 While backing up at between five and 10 mph, the truck struck another vehicle. According to the claimant, he complained to his foreman of pain the next day. He was then confronted by a superintendent with a positive drug screen and fired.
 

 laOn April 23, 2003, the claimant filed a disputed claim for compensation with the Office of Workers’ Compensation (ÓWC). He alleged that he was injured in the March 2003 auto accident while riding as a passenger in a company-owned extended cab driven by a Hemphill foreman. He stated that he injured his shoulder, neck, back and feet. He further asserted that the employer paid him no wage benefits and refused to authorize medical treatment or an evaluation.
 

 The employer generally denied the claims and stated that the injury was never reported to it while the claimant was employed by it. In its subsequent pretrial statement, the employer conceded that the claimant was in the course and scope of his employment at the time of the accident. However, it also alleged that the accident was “extremely minor,” the claimant was not injured, and no report of injuries was made by the claimant while he was still employed by the company.
 

 In January 2004, the claimant was involved in a second auto accident which was not work related. On March 30, 2004, the claimant’s doctor, Dr. Randy Head, prepared a letter noting this accident and stating that while it had increased the claimant’s pain from the previous accident, the pain was at baseline “so pain secondary to the motor vehicle accident has resolved.” The ^claimant was released from treatment for the motor vehicle accident as of the date of the letter.
 
 [2]
 

 In March 2006, Dr. Head prepared another letter indicating that any medical treatment the claimant received after the January 2004 accident was not related to the March 2003 work-related accident. Dr. Head stated that the claimant’s low back pain was at baseline prior to the January 2004 accident and that no further medical treatment should have been the responsibility of workers’ compensation for the March 2003 injury.
 
 [3]
 

 In April 2006, the employer filed an amended answer in which it asserted that it had received information that the claimant had willfully made false statements or misrepresentations to health care providers in order to receive workers’ compensation benefits. These assertions apparently concerned the second accident. The employer sought to terminate the claimant’s rights to receive benefits based on La. R.S.
 
 *431
 
 23:1208(E). It also requested restitution for benefits paid to the claimant.
 

 In October 2006, the claimant saw Dr. Head for the last time. According to Dr. Head, the claimant asked him to “change [his] story” so that the claimant “could be paid.” Dr. Head further stated that the claimant told him that he had “messed up” the claimant’s lawsuit. Dr. Head documented the conversation in his office notes for that visit.
 

 |BIn March 2007, the claimant filed an amended claim with the OWC. He asserted that no medical treatment had been authorized and no orthopedist had been approved to examine him. He also requested penalties and attorney fees.
 

 In its answer to the amended claim, the employer denied that the claimant sustained any injury as a result of the car accident. Alternatively, it denied that the claimant was currently disabled; if he sustained any injury, the employer asserted that it was only a temporary aggravation of a preexisting degenerative condition and that he was recovered. Furthermore, among other things, the employer accused the claimant of violating La. R.S. 23:1208 by submitting false testimony and statements to secure benefits.
 

 In January 2008, the employer filed a motion for summary judgment based upon the claimant’s alleged violation of La. R.S. 23:1208. Specifically, it asserted that the claimant was involved in another auto accident on January 18, 2004, which he never reported to the workers’ compensation carrier or to three of the doctors who saw him and that Dr. Head learned of it independently. The employer alleged that Dr. Head was of the opinion that the March 2003 accident did not injure the claimant. Dr. Head testified in his deposition that on October 24, 2006, the claimant asked Dr. Head to change his medical records so the claimant could “get paid” for |fihis March 2003 accident. Dr. Head also testified that the claimant asked him to make false statements about his condition and treatment in order to secure benefits. In support of the motion, the employer submitted Dr. Head’s deposition and medical records, as well as the claimant’s deposition.
 

 The claimant filed an opposition to the motion for summary judgment in which he denied making the alleged statements. He argued that summary judgment was not appropriate because the trier of fact needed to assess the credibility of the witnesses. In support of his opposition, he filed an affidavit in which he denied making the claimed statements to Dr. Head. He also stated that he never gave information to his treating doctors about his subsequent accident because they did not ask for such information.
 

 Following a hearing on April 21, 2008, the workers’ compensation judge (WCJ) denied the motion for summary judgment based on the credibility issue.
 

 The matter was tried on July 9, 2009. Testimony was given by the claimant; Dr. Head; Mr. Temple, the driver of the vehicle in which the claimant was injured in March 2003; and Bryan Johnson, an insurance adjuster. The claimant emphatically denied ever asking Dr. Head to change his story about the claimant’s case. Dr. Head testified that at his last appointment the claimant asked him to change his story so the claimant |7could get paid. According to Dr. Head, he told the claimant that he could only tell the truth, would not change his story, and would not fabricate records. The claimant stated that the doctor had “messed up” his lawsuit. When he asked the claimant what he wanted him to do, the claimant replied, “Change your mind so I can get paid.” Dr. Head testified that he told the claimant that he could only tell the truth and that he would not lie for any
 
 *432
 
 reason or any amount of money. Dr. Head’s notes from this visit corroborated his testimony.
 
 [4]
 

 At the conclusion of the case, the WCJ ruled in favor of the employer. After addressing concerns as to the credibility of both the claimant and Dr. Head, the WCJ concluded that the claimant did in fact ask the doctor to change his opinion. Furthermore,- the WCJ found that he willfully attempted to have Dr. Head make a false statement in order to obtain benefits. Because the claimant’s actions violated La. R.S. 23:1208, the WCJ found that he forfeited his rights to workers’ compensation and that the employer was entitled to restitution from January 18, 2004, the-date of the second accident, to March 20, 2006, the date of Dr. Head’s letter.
 

 The claimant, who was then proceeding in proper person, filed a motion for new trial. He asserted that Dr. Head committed perjury and fraud |Rm his testimony. Following argument on December 13, 2009, the WCJ denied the motion.
 

 The claimant appealed.
 

 LA. R.S. 23:1208 FRAUD
 

 In his
 
 pro se
 
 brief, the claimant mainly sets forth his version of the facts. He argues that Dr. Head’s testimony and medical records involved false swearing, inconsistent statements, and perjury. He contends that it was inconsistent for the doctor to document an injury and treat him and then later state that he did not believe the claimant was injured from the beginning. He further asserts that the WCJ’s judgment rested on “an inadvertent and inconsequential false statement with no foundation of rational reason.”
 

 The employer argues that the issue before this court — whether the WCJ erred in finding that the claimant forfeited his entitlement to benefits — involves factual determinations as to credibility which are within the province of the trier of fact. It maintains that the record does not show that the WCJ was manifestly erroneous or clearly wrong in her findings of fact. In addition to the conflict between the testimony of the claimant and Dr. Head, the employer points to the claimant’s failure to advise two doctors who saw him in February 2004 about the January 2004 accident because he did not think it was necessary.
 

 lgLaw
 

 La. R.S. 23:1208 provides, in relevant part:
 

 A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
 

 [[Image here]]
 

 D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be ... ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
 

 [[Image here]]
 

 E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
 

 
 *433
 
 This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized.
 
 Baker v. Stanley Evans Logging,
 
 42,156 (La.App.2d Cir.6/20/07), 960 So.2d 351,
 
 writ denied,
 
 2007-1817 (La.12/14/07), 970 So.2d 533;
 
 Slater v. Mid-South Extrusion,
 
 43,343 (La.App.2d Cir.8/13/08), 989 So.2d 252. Because statutory forfeiture of workers’ compensation benefits for willfully making a false statement for the purpose of obtaining benefits is a harsh remedy, it must be strictly construed.
 
 Risk Management Services v. Ashley,
 
 38,431 (La.App.2d Cir.5/14/04), 873 So.2d 942,
 
 writ denied,
 
 2004-1481 (La.9/24/04), 882 So.2d 1138. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits.
 
 Baker v. Stanley Evans Logging, supra; Slater v. Mid-South Extrusion, supra.
 

 The WCJ’s decision to impose or deny forfeiture under La. R.S. 23:1208 is a factual finding which will not be disturbed on appeal absent manifest error.
 
 Brooks v. Madison Parish Service District Hospital,
 
 41,957 (La.App.2d Cir.3/7/07), 954 So.2d 207,
 
 writ denied,
 
 2007-0720 (La.5/18/07), 957 So.2d 155.
 

 When a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989);
 
 Wilson v. General Motors Corporation,
 
 45,232 (La.App.2d Cir.5/26/10), 37 So.3d 602. When there is a conflict in the testimony, L,reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own inferences and evaluations are as reasonable.
 
 Rosell v. ESCO,
 
 supra;
 
 Read v. Pel-State Oil Company,
 
 44,218 (La.App.2d Cir.5/20/09), 13 So.3d 1191. Where the fact finder’s conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
 
 Rosell v. ESCO, supra; Hansford v. St. Francis Medical Center, Inc.,
 
 43,984 (La.App.2d Cir. 1/14/09), 999 So.2d 1238. When there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Wilson v. General Motors Corporation, supra.
 

 Discussion
 

 We have reviewed the evidence presented at trial, including the testimony of the claimant and Dr. Head. The WCJ observed both the claimant and Dr. Head and ultimately concluded that Dr. Head’s testimony that the claimant had- asked him to change his story so the claimant could, recover benefits was more credible than the claimant’s denial of the same. Based upon our review, we are unable to find that the WCJ was manifestly |12erroneous or clearly wrong in its factual findings. Resolving issues of witness credibility is a matter best left to the trier of fact who has the benefit of observing the witnesses and their demeanor at trial.
 

 
 *434
 
 The record fully supports the WCJ’s credibility finding against the claimant. His testimony was replete with contradictions. On the one hand, he gave a detailed account of the events preceding the first accident in which his foreman was driving; then he stated that he was asleep at the time of the accident and was jolted awake. The claimant testified that immediately after the accident he felt stiffness but not pain. Yet in his 2006 deposition, he stated that he immediately felt pain. The claimant testified that the day after the accident he told his foreman that he was injured
 
 [5]
 
 ; he then explained to his superintendent about how he had been injured in the accident, only to be immediately fired due to a positive drug test. However, in his 2003 deposition, the claimant stated that he was fired before he had a chance to tell the superintendent.
 

 As to the second accident, the claimant was equally contradictory. He testified at trial that it was a low impact collision; yet in his 2006 deposition, he testified that it “completely smashed in” the door of the vehicle he was driving.
 
 [6]
 
 He also testified at trial that it exacerbated his prior injuries. He stated that he suffered a slight whiplash, his neck was extremely sore, and | iahis shoulders were irritated. However, he felt no need to mention the January 2004 accident to Dr. Brown or Dr. McHugh, both of whom he saw the following month. Additionally, in his 2006 deposition, he testified that the second accident neither increased nor decreased his pain.
 
 [7]
 

 At trial, the claimant was using a walking cane. He testified that Dr. Head suggested its use. He was confronted with a statement in Dr. Head’s notes that the claimant had requested the cane. Furthermore, Dr. Head testified that, based upon the claimant’s x-rays and physical exam findings, he did not know why the claimant would need a cane.
 

 Accordingly, we affirm the WCJ’s finding that the claimant committed fraud under La. R.S. 23:1208, her consequent order that the claimant pay restitution, and her rejection of the claimant’s demands with prejudice.
 

 CONCLUSION
 

 The ruling of the WCJ is affirmed. Costs of this appeal are assessed to the appellant/claimant.
 

 AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before BROWN, GASKINS, PEATROSS, DREW and LOLLEY, JJ.
 

 Rehearing denied.
 

 [1]
 

 . Although the parties stipulated that the accident occurred on March 12, 2003, we note that the date given in the accident report was March 11, 2003.
 

 [2]
 

 . Dr. Head later testified that the letter was to State Farm Insurance Company. He felt that the claimant was at baseline — or maximum medical improvement — on his work-related workers' compensation injury.
 

 [3]
 

 .In this letter, Dr. Head also mentioned that the claimant saw Dr. Bernie McHugh on February 26, 2004, and Dr. Douglas Brown on February 27, 2004; yet the claimant could only "vaguely” recall seeing Dr. McHugh in the history taken by Dr. Brown the next day. Also the claimant failed to mention the accident on January
 
 18,
 
 2004 which increased his low back pain.
 

 [4]
 

 . The doctor's notes for the October 24, 2006, visit read as follows: "Pt. basically asked me to change my story about his case so he could be paid. I told him I would not[,] I only tell the truth, and for 10 million $ I would not fabricate anything for anyone.”
 

 [5]
 

 . Although he did not specifically remember the claimant, the foreman was able to testify at trial that none of his passengers from that accident ever told him they were injured.
 

 [6]
 

 . The photos admitted into evidence of the vehicle driven by the claimant show a very minor collision with a part of a door dented.
 

 [7]
 

 .The record suggests that the claimant filed a personal injury claim with State Farm for the second accident; however, the evidence on this issue is less than clear.