LOLLEY, J.
| plaintiff, James Borders, appeals a judgment from the Office of Workers’ Compensation, District 1W, Bossier Parish, Louisiana (the “OWC”), in favor of Boggs & Poole Contracting Group, Inc. and the Phoenix Insurance Company (the “defendants”). For the following reasons, we affirm the trial court’s judgment.
Facts
Borders claims that on February 19, 2010, he injured his knee and back while on the job with his employer Boggs & Poole Contracting Group, Inc. Borders was treated at the hospital for pain related to his knee, but not immediately after the accident. An X-ray taken at that hospital visit showed that there was no fracture, and an MRI taken was essentially normal. Borders began receiving workers’ compensation benefits as a result of his workplace accident.
In August 2010, Borders was evaluated by Dr. Donald Smith for the defendants’ second medical opinion. In his report, Dr. Smith opined that Borders showed signs of “marked emotional magnification of symptoms” and determined that there was no need for surgical or invasive intervention. Dr. Smith believed Borders was medically capable of returning to full and unrestricted work. Borders continued to receive benefits despite Dr. Smith’s August 2010 report.
Eventually, Borders filed a disputed claim for compensation on June 22, 2012, seeking to obtain pain management, a *310 choice of pain management physician, and penalties and attorney fees. Soon after, Borders’ benefits were terminated following a reexamination by Dr. Smith and a surveillance 12video which defendants maintain indicated that Borders was willfully misrepresenting his condition for the purpose of obtaining workers’ compensation benefits. In response to the termination of his benefits, Borders amended his claim, alleging that his wage benefits were improperly terminated or reduced.
A trial of the matter commenced on August 20, 2013, at which Borders appeared pro se. After the conclusion of the trial, the workers’ compensation judge (“WCJ”) took the matter under advisement and subsequently entered judgment in favor of the defendants. In its judgment, the WCJ ordered that: Borders’ demand for benefits be dismissed based on the finding of fraud in violation of La. R.S. 23:1208; he pay a civil penalty of $1,000.00 to the Kids Chance Scholarship Fund; he pay restitution to the defendants for all benefits paid to him through June 11, 2012; and, he pay all costs of litigation. In extremely thorough reasons for judgment, the WCJ concluded that Borders had forfeited his rights to any workers’ compensation benefits through his willful misrepresentations to obtain benefits. This appeal by Borders ensued.
Discussion
On appeal Borders argues that the WCJ committed manifest error in denying his claims for workers’ compensation benefits. In support of his argument, Borders states that it is undisputed that he was injured on the job and the defendants provided no evidence that he was malingering. The defendants do not dispute that an accident occurred; however, they do dispute the nature and extent of the injuries and their causal relationship to [sthe accident. The defendants contend that the OWC properly determined that the evidence proved that Borders not only lacked credibility, but that he clearly made false statements and misrepresentations constituting fraud under La. R.S. 23:1208. We agree.
Louisiana R.S. 23:1208 states in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
[[Image here]]
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers’ compensation judge of not less than five hundred dollars nor more than five thousand dollars payable to the Kids Chance Scholarship Fund, Louisiana Bar Foundation, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and, (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a *311 claimant can be penalized. Daniels v. Hemphill Const. Co., 45,946 (La.App.2d Cir.01/26/11), 57 So.3d 428, writ denied, 2011-0633 (La.05/06/11), 62 So.3d 128. Because statutory forfeiture of ^workers’ compensation benefits for willfully making a false statement for the purpose of obtaining benefits is a harsh remedy, it must be strictly construed. Daniels, supra; Risk Management Servs. v. Ashley, 38,431 (La.App.2d Cir.05/14/04), 873 So.2d 942, writ denied, 2004-1481 (La.09/24/04), 882 So.2d 1138. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. Daniels, supra.
A WCJ’s decision to impose or deny forfeiture under La. R.S. 23:1208 is a factual finding which will not be disturbed on appeal absent manifest error. Brooks v. Madison Parish Serv. Dist. Hosp., 41,-957 (La.App.2d Cir.03/07/07), 954 So.2d 207, writ denied, 2007-0720 (La.05/18/07), 957 So.2d 155.
When a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Wilson v. General Motors Corp., 45,232 (La.App.2d Cir.05/26/10), 37 So.3d 602. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own infer-enees and evaluations are as reasonable. Rosell v. ESCO, supra; Read v. Pel-State Oil Co., 44,218 (La.App.2d Cir.05/20/09), 13 So.3d 1191. Where the factfinder’s conclusions are based on determinations | ^regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, supra; Hansford v. St. Francis Medical Ctr., Inc., 43,984 (La.App.2d Cir.01/14/09), 999 So.2d 1238. When there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Wilson v. General Motors Corp., supra.
Our review of this record shows that the defendants clearly met their burden, and the WCJ’s judgment was not in error. Initially, we note that Borders failed to offer any evidence in support of his claims for benefits. Whereas Borders repeatedly insisted that a doctor told him he had a “cracked kneecap” due to his accident, he presented no evidence, other than his dubious testimony, to show that anything was medically wrong with him.[1] Despite Borders’ protestations that he had a cracked kneecap, the record shows that when Borders presented at the hospital for his knee pain on February 23, 2010 (several days after the accident), X-ray of the knee were negative for fracture. Furthermore, an MRI of his knee was essentially normal. The defendants’ physician, Dr. Don Smith, offered a second medical opinion on Borders’ condition. Curiously, Bor *312 ders insisted at trial that the OWC investigate Dr. Smith, who opined that Borders exhibited |fi“marked emotional magnification of symptoms and findings.” Dr. Smith testified that Borders would not require any surgery or invasive procedure as he saw no abnormalities that should constitute an impairment to return to full and unrestricted work and/or leisure activities.
Furthermore, the surveillance video obtained by the defendants showed that Borders’ “extracurricular activities” demonstrated that his claims of a disability and inability to work are untrue. The WCJ made the following observations in the reasons for judgment:
The video depicts Mr. Borders performing a wide range of activities, including lifting a boat battery, carrying a small boat from the back of his truck, washing his car, and generally performing activities well beyond his reported abilities. Of particular note, on February 25 and 26, 2012, investigators observed him sin-glehandedly unloading a pirogue from his truck, fishing for several hours, and then reloading the pirogue back into his truck. He performed numerous other activities that while perhaps routine, substantially differ from claimant’s representation of his condition. At no point in the video did he appear injured or in any pain. However, just two days later he complained of such extensive low back and leg pain that Dr. Kerr recommended a bilateral SI transoraminal epidural steroid injection. [Footnote omitted].
Despite his rigorous activity on the surveillance tape, when Borders presented to Dr. Smith, he came to the office using a cane. Dr. Smith continued to believe that Borders was magnifying his symptoms; had reached maximum medical improvement; and, was not a candidate for surgery.
In concluding that Borders willfully misrepresented his condition to the doctors, attorneys and the OWC in order to obtain workers’ compensation benefits, the WCJ specifically noted:
17Having observed Borders at trial and in the light of the evidence offered by defendants, ... he is not credible. He changed his story on multiple occasions during his deposition when he was confronted with the surveillance evidence. He repeatedly broke into tears at trial, only to recover immediately upon exiting the courtroom. While he questioned whether he was able to drive at trial, he drove off in his own vehicle when trial recessed for lunch. Claimant acknowledged that he uses his cane primarily when he sees his doctors or his lawyer, or when he comes to court. It seems his injuries likewise surface only when necessary to support his claim.
Making such credibility determinations is within the province of the factfinder, and considering this record, we cannot say that the WCJ was manifestly erroneous or clearly wrong. The defendants proved that Borders willfully misrepresented his injury for the purpose of obtaining benefits. Borders’ statements and actions were not inadvertent, but clearly made willfully, and the WCJ’s judgment was not in error.
Conclusion
For the foregoing reasons, the judgment of the trial court in favor of Boggs & Poole Contracting Group, Inc. and the Phoenix Insurance Company is affirmed. All costs of this appeal are assessed against James Borders.
AFFIRMED.

. When asked by the WCJ if he had "any exhibits ... to offer into the record," Borders responded that he had a court record "from Caddo” for an offense against him of “possession of marijuana with an intent." However, during the trial, he could not even produce that record. The WCJ noted the lack of relevance of the marijuana charge in the workers’ compensation proceeding. Notably, Borders made no claim that his marijuana usage was for medicinal purposes of treating pain associated with his alleged workplace injury.